RECEIVED
SEP 2 2 2011
TONY H. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY:

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

GREGORY WILLIS, ET AL.

versus            CIVIL ACTION NO. 09-2103
                                     JUDGE TOM STAGG

CLECO CORPORATION

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by the defendant, Cleco Corporation ("Cleco"). See Record Document 41. Based on the following, Cleco's motion for summary judgment is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

Plaintiffs Eddie Culbert ("Culbert"), Ronald Smith, Sr. ("Smith"), Roy Hudson ("Hudson"), Isaac Jordan ("Jordan"), Caldwell Burgess ("Burgess"), and Stafford Williams ("Williams") (hereinafter referred to as "the plaintiffs"), along with six other current and former African-American employees of Cleco, brought this action against Cleco, alleging claims of race discrimination, age discrimination, and retaliation. See Record Documents 1 and 5. Plaintiff Debra Chenevert ("Chenevert") (hereinafter referred to with the other plaintiffs as "the plaintiffs") filed a motion to

1

intervene on July 29, 2010, which was granted on August 4, 2010. See Record Documents 21 and 24. The plaintiffs bring their claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq.; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et. seq.; Section 1981 of the United States Code, 42 U.S.C. § 1981; the Louisiana Employment Discrimination Law, La. R.S. 21:301, et. seq.; and the Louisiana Commission on Human Rights, La. R.S. 51:2231.[1]

Cleco filed this motion for summary judgment, seeking dismissal of the plaintiffs' federal and state law claims on procedural grounds.[2] See Record Document 41. In its reply brief, Cleco argued for the first time that the plaintiffs' claims should be dismissed on substantive grounds as well. See Record Document 72. The plaintiffs in turn filed a motion to strike portions of the defendant's reply brief, which the court denied. See Record Documents 74 and 80. The plaintiffs thereafter filed a sur-reply, with leave of the court. See Record Document 85. The

---

[1] The plaintiffs "do not dispute Defendant [sic] assertions that they failed to exhaust their administrative remedies under Title VII and ADEA." Record Document 61 at 6. The plaintiffs also "agree that Louisiana Revised Statute Section 51:2256 does not allow claims of retaliation." Id. at 7. Accordingly, Cleco is entitled to summary judgment as to the plaintiffs' claims under Title VII, the ADEA, and La. R.S. 51:2256 and these claims are **DISMISSED**.

[2] Cleco has filed separate motions for summary judgment against the other plaintiffs in this case. See Record Documents 35, 36, 38, 39, and 40. The court addresses the other motions in separate opinions.

court will therefore address both the defendant's substantive and procedural arguments.

**A.  Eddie Culbert.**[3]

Culbert worked for Cleco for thirty years, from May of 1978 until he resigned in July of 2008. He claims he was constructively terminated because he was subjected to "an unreasonable and unbearable racist environment" and a "continuing pattern of hostile work environment and failure to promote"[4] at Cleco for thirty years. Record Document 61. Specifically, Culbert contends that he received lower compensation than similarly situated white employees, was not given the same training opportunities, and was discouraged from applying for promotions. He reported discriminatory conduct to management over the years but claims management failed to take any action.

**B.  Caldwell Burgess.**

Burgess worked for Cleco from 1984 until he retired in February of 2006. Like Culbert, Burgess claims he was constructively terminated. He contends that he

---

[3]The court only includes the facts and claims by the plaintiffs relevant to the instant motion. The plaintiffs also allege numerous other, older claims of race discrimination and retaliation that the court finds it unnecessary to detail for the purposes of this motion.

[4]Culbert does not identify any specific positions to which he was not promoted. See Record Document 5. He presumably claims a failure to promote as a part of his hostile work environment claim.

3

received lower pay than similarly situated white employees and the working conditions were "unreasonable and untenable." Record Document 5.

### C. Ronald Smith.

Smith began working for Cleco in 2000 and currently serves as a Customer Account Manager. Smith asserts that he has been repeatedly denied promotions because of his race. Specifically, he claims he was denied a promotion to the position of Director of Credit and Collections and Customer Information Systems in 2005, to a "Management position" in 2007, to the position of Director of Contracts and Marketing in May of 2008, and to several other positions prior to 2005. See Record Document 5. He also asserts that Cleco discriminated against him by eliminating his position in 2004. See id.

Smith further alleges that Cleco has retaliated against him for reporting discrimination to management. According to Smith, Cleco retaliated against him by conducting an audit of his business expenses in 2003 and by initiating an investigation into whether he was having a relationship with a co-worker in October of 2008. See Record Documents 5 and 61. He further alleges a claim of hostile work environment.

### D. Roy Hudson.

Hudson began his employment with Cleco in 1988. He alleges that, in 2007,

4

he applied for and was denied the opportunity to participate in the voluntary rescue team because of his race. In his deposition, however, Hudson explains that while he was not initially selected for the team, he was added to the team after he complained. See Record Document 72, Deposition of Hudson. He states that he was added to the team three or four days after he was originally not selected. He testified that he was satisfied with this result and did not suffer any harm from the delay. See id., Deposition of Hudson. According to Hudson, volunteering for the rescue team at Cleco was viewed as a proactive step toward promotion.

In 2007, Hudson was allegedly denied the opportunity for overtime work.[5] He states that Cleco requested volunteers to work overtime on a welding job but only white employees were called for the overtime work and that "the black employees were told they needed short guys to weld and the black employees were too tall." Record Document 61. Hudson further claims he continues to be subjected to a hostile work environment and pattern of race discrimination.

**E.   Isaac Jordan.**

Jordan has worked for Cleco for twenty-five years, during which time he has

---

[5] Hudson claims he was denied the work in 2008. See Record Document 5. However, Cleco's business records indicate the overtime work was conducted in September of 2007. See Record Document 41, Affidavit of the Manager of Power Plant Maintenance, Marty Robinson. Hudson admitted in his deposition that it could have been 2007. See id., Deposition of Hudson at 84.

5

allegedly been subjected to a hostile working environment. According to Jordan, his supervisor, Rudy Bordelon ("Bordelon"), routinely made racist statements and told racially offensive jokes until his death in 2007. Jordan claims that "Cleco and Bordelon created at atmosphere were [sic] Mr. Jordan and other black employees felt angry, degraded and were afraid to speak out for fear of losing their jobs." Record Document 5. Jordan also asserts that there are approximately 200 employees at the Rodemacher Power Station but there are no African American employees in any management positions. See id.

Jordan also claims he has been repeatedly denied promotions during his career. In 2007, Jordan applied for the position of supervisor of the coal handler department, but he was not selected. He contends that a similarly situated white employee with less time and experience in the coal yard was promoted over him.

**F.   Stafford Williams.**

Williams was employed with Cleco from 1985 through 1988, initially as a Utility Worker and later as a Plant Operator. He also worked in the maintenance department as a Power Plant Mechanic/Helper. Williams asserts that he received outstanding performance reviews and left on his own accord. In 2007, Williams applied for the position of Apparatus Mechanic at Cleco. There were five open positions, but Williams was not selected. Instead, Cleco hired four white males and

one Hispanic person as a temporary employee. In the spring of 2008, Williams was interviewed by Cleco for a power plant position. He claims the hiring supervisor told him he was "more than qualified," yet he was not selected for the position. He alleges he was denied the positions because of his race and age. See Record Document 5.

### G. Debra Chenevert.

Chenevert began working for Cleco in 2003. She claims Cleco refused to promote her because of her race. According to Chenevert, she was informed in June of 2007 that she was being promoted to the Lead Supervisor position in Cleco's Pineville, Louisiana office. See Record Document 25. The position involved greater job duties and an increase in pay. Then, two days later, her supervisor informed her that the decision to promote her was overturned. The position was given to Terri Thevenote, a white employee who Chenevert contends has less education and experience than her. Later that month, Chenevert met with John Melancon ("Melancon"), a Human Resources representative, to discuss Cleco's reasons for taking away the promised promotion. Melancon told her the decision to promote her had been overturned by upper management. In July of 2008, Chenevert applied for a position as a Payroll Analyst but was not given an interview. Chenevert alleges that a white female named Sarah Phillips, who did not have payroll experience, was promoted instead.

Chenevert also alleges retaliation by Cleco. She asserts that the Manager of Customer Services, Jimmy Slater, "would often come into the Customer Services Office to see if there were any problems between Plaintiff and Terri Thevenote;" "asked another [employee] if Plaintiff was capable of speaking;" and "told another employee Plaintiff was 'just not Lead material.'" Record Document 25 at 7.

## II. ANALYSIS

### A. Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine

---

[6]The court notes that the newly amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis. Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

[dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B.    Statute Of Limitations.**

Cleco asserts that Louisiana's one-year prescriptive period applies to the plaintiffs' federal and state law claims, brought pursuant to 42 U.S.C. § 1981 and Louisiana Revised Statute 23:301, et. seq., and their claims are thus time-barred. See Record Documents 41 and 72.

**1.    Section 1981.**

Section 1981 provides that "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981. Section 1981 does not contain a statute of limitations. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371, 124 S. Ct. 1836, 1839 (2004). When a federal statute does not contain a statute of limitations, courts should

9

apply "the most appropriate or analogous state statute of limitations." Id. Under Louisiana law, "[a] section 1981 claim is best characterized as a tort . . . and is, therefore, governed by the one-year prescriptive period for delictual actions dictated by [Louisiana Civil Code article] 3492." Taylor v. Bunge Corp., 775 F.2d 617, 618 (5th Cir. 1985). However, for actions arising under federal statutes enacted after December 1, 1990, courts must apply a catchall four-year statute of limitations. See 28 U.S.C. § 1658 ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.").

Section 1981 was originally enacted as part of the Civil Rights Act of 1866 and covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." Patterson v. McLean Credit Union, 491 U.S. 164, 179, 109 S. Ct. 2363, 2374 (1989). Section 1981 "did not protect against harassing conduct that occurred after the formation of the contract." Jones, 541 U.S. at 372, 124 S. Ct. at 1840 (citing Patterson, 491 U.S. 164, 109 S. Ct. 2363). Section 1981 was later amended by the Civil Rights Act of 1991 to create a cause of action for discriminatory and retaliatory conduct occurring after the formation of the contract. See id. Thus, the applicable statute of limitations depends upon whether the claim was actionable under the older version of section

1981 or is only made possible by the 1991 amendments. See id. at 382, 124 S. Ct. at 1845. Where the plaintiff's claim was available under the original section 1981, the court must apply the analogous state statute of limitations, which in Louisiana is one-year. See id. at 371, 124 S. Ct. at 1839; Taylor, 775 F.2d at 618. However, where the claim is only available under section 1981 as amended, the cause of action is said to "arise under" the Civil Rights Act of 1991 and the federal four-year statute of limitations provided by section 1658 applies. See Jones, 541 U.S. at 382, 124 S. Ct. at 1845.

Plaintiff Williams alleges that Cleco failed to hire him because of his race and age. Failure to hire claims involve pre-contract formation conduct and were available under section 1981 before the 1991 amendments. See Mitchell v. Crescent River Port Pilots Assoc., 265 F. App'x 363 (5th Cir. 2008). Therefore, the court must borrow the analogous state statute of limitations, which in Louisiana is one-year. See id. Williams asserts that Cleco refused to hire him in 2007 and in the spring of 2008, but this suit was not filed until December of 2009. See Record Document 61 at 2, 4. Williams's claim is therefore untimely. Accordingly, Cleco's motion for summary judgment with regard to Williams's section 1981 failure to hire claim is granted.

The plaintiffs' hostile work environment, retaliation, and wrongful termination claims, however, are only actionable under section 1981 as amended and are

11

governed by the four-year statute of limitations provided by section 1658. See Jones, 541 U.S. at 382, 124 S. Ct. at 1845 (holding that plaintiffs' hostile environment, wrongful termination, and failure to transfer claims were not violations of the original section 1981); Foley v. Univ. of Houston Sys., 355 F.3d 333, 339 (5th Cir. 2003) (noting that under Patterson and Carter v. S. Cent. Bell, 912 F.2d 832, 838-41 (5th Cir. 1990), the original section 1981 did not extend to retaliation or discriminatory discharge claims). In its motion for summary judgment, Cleco argues only that Louisiana's one-year prescriptive period applies and the plaintiffs' claims are therefore untimely. See Record Documents 41 at 5 and 72. Cleco does not address the application of the federal four-year statute of limitations or contend that any of the plaintiffs' claims are untimely under it.[7] Accordingly, Cleco's motion for summary judgment as to the plaintiffs' section 1981 hostile environment, retaliation, and wrongful termination claims is denied.

The plaintiffs have also alleged failure to promote claims. Promotion claims

---

[7]Cleco appears to have abandoned its statute of limitations claim with regard to the plaintiffs' hostile work environment, retaliation, and wrongful termination claims, as it does not address them in its reply brief. Although some of these claims are outside of the four-year statute of limitations, the court cannot make summary judgment arguments for the defendant. See John Deere Co. v. Am. Nat'l Bank, Stafford, 809 F.2d 1190, 1192 (5th Cir. 1987) ("[A] district court may not grant summary judgment sua sponte on grounds not requested by the moving party.").

were actionable under section 1981, prior to the 1991 amendments, if "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." Patterson, 491 U.S. at 185, 109 S. Ct. at 2377. As the Supreme Court explained in Patterson, "only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under [section] 1981." Id. "In deciding whether a change of position rises to the level of a new and distinct relation, the court must compare the employee's current duties, salary, and benefits with those incident to the new position." Police Assoc. of New Orleans v. City of New Orleans, 100 F.3d 1159, 1170-71 (5th Cir. 1996). If the new position involves "substantial changes," the failure to promote claim was available under section 1981 prior to the 1991 amendments and Louisiana's one-year prescriptive period applies. Police Assoc. of New Orleans, 100 F.3d at 1170-71; see Fonteneaux v. Shell Oil Co., 289 F. App'x 695, 699 (5th Cir. 2008). Otherwise, the claim is only available under section 1981 as amended and the four-year statute of limitations applies. See id.

The court finds that genuine disputes of material fact remain as to the plaintiffs' promotion claims. There is no evidence in the summary judgment record to determine whether the four-year or the one-year statute of limitations applies. Cleco relies solely on its assertion that a one-year statute of limitations applies and

13

makes no substantive argument why these claims should be dismissed. As noted above, determining the applicable statute of limitations for a failure to promote claim is a fact intensive inquiry. Accordingly, the court finds that a factual dispute exists and Cleco's motion for summary judgment as to the plaintiffs' failure to promote claims is denied.

### 2.  Louisiana Law Claims.

The prescriptive period for employment discrimination claims is one year. See La. R.S. 23:303(D); Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ., 579 F.3d 546, 552 (5th Cir. 2009). Of the plaintiffs' claims, the most recent is Smith's claim that Cleco initiated a retaliatory investigation into his personal life in October of 2008. The plaintiffs did not file this suit until December 11, 2009, and Chenevert did not move to intervene until July 29, 2010.[8] Thus, the plaintiffs' Louisiana law

---

[8] In the plaintiffs' opposition, Chenevert contends that she "alleged several claims of discrimination and retaliation that occurred inside of the one year prescriptive period of 23:303" and cites her complaint, Record Document 25, page 271 paragraph 28. Record Document 61 at 7. Chenevert's complaint does not have a page 271 and paragraph 28, on page 7, does not provide a date of the alleged discriminatory or retaliatory actions. See Record Document 25 at 7. Chenevert also does not state elsewhere a date for this claim or argue a continuing violation theory. The most recent of Chenevert's dated allegations occurred in July of 2008. See id. As mentioned, she did not intervene in the lawsuit until July 29, 2010. See Record Document 21. Her claims are untimely. In their opposition, the plaintiffs do not argue, or provide evidence, that any of the other plaintiffs have timely claims under Louisiana Revised Statute 23:303. See Record Document 61.

claims are prescribed and Cleco's motion as to these claims is granted.[9] See Record Document 61. The court need not reach the issue of whether the plaintiffs provided notice under Louisiana Revised Statute 23:303.

C.  **Race Discrimination.**

Hudson alleges that Cleco refused to select him for the volunteer rescue team because of his race, in violation of 42 U.S.C. § 1981 and La. R.S. 23:301, et seq.[10] For cases of discrimination based on circumstantial evidence, the court applies the McDonnell Douglas burden-shifting analysis.[11] See Davis v. Dallas Area Rapid

---

[9] Cleco also insists that the plaintiffs' intentional infliction of emotional distress claims are untimely. See Record Document 41. It does not appear that the plaintiffs have alleged claims for intentional infliction of emotional distress under Louisiana law, although they do claim **damages** for emotional pain and distress. See Record Document 5 at 53 and 25. To the extent that the complaints included claims for intentional infliction of emotional distress, those claims must be dismissed. Claims for intentional infliction of emotional distress are governed by a one-year prescriptive period. See La. Civ. Code art. 3492; Horaist v. Doctor's Hosp. of Opelousas, 255 F.3d 261, 268 (5th Cir. 2001). As discussed above, none of the plaintiffs' claims fall within the one-year prescriptive period. Additionally, the plaintiffs do not counter Cleco's argument that their claims are untimely. See Record Document 61. Therefore, to the extent the plaintiffs allege claims for intentional infliction of emotional distress, the court finds that these claims are prescribed and Cleco's motion for summary judgment is **GRANTED**.

[10] Claims of employment discrimination brought pursuant to 42 U.S.C. § 1981 and La. R.S. 23:301, et seq., are analyzed under the same standards as Title VII claims. See Decorte v. Jordan, 497 F.3d 433, 437 (5th Cir. 2007). Hudson's state law claim has been dismissed. The court will address his section 1981 claim under the applicable federal precedents.

[11] "An employee can prove discrimination through direct or circumstantial evidence." Jones v. Robinson Prop. Grp., L.P., 427 F.3d 987, 992 (5th Cir. 2005).

15

Transit, 383 F.3d 309, 316-17 (5th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)).

> To survive summary judgment under McDonnell Douglas, the plaintiff must first present evidence of a prima facie case of discrimination. If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action.[12] If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.[13]

Davis, 383 F.3d at 317 (citations omitted).

As noted above, the court must first consider whether the plaintiff has established a prima facie case of discrimination. See id. Under this test, a plaintiff must demonstrate that he:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment

---

Hudson does not allege that he possesses direct evidence in support of his race discrimination claims. See Record Document 59; see also Jones, 427 F.3d at 993 (providing descriptions and examples of direct evidence of discrimination that do not match the evidence presently before this court in regard to Hudson's claims).

[12]"This burden on the employer is only one of production, not persuasion, involving no credibility assessments." Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000).

[13]"[A] plaintiff must present sufficient evidence to find that the employer's asserted justification is false." Crawford v. Formosa Plastics Corp., 234 F.3d 899, 903 (5th Cir. 2000) (citations and quotations omitted).

action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007).

Cleco's refusal to place Hudson on the volunteer rescue team was not an adverse employment action, and, therefore, Hudson has not stated a prima facie case of discrimination. For a Title VII race discrimination claim, the adverse employment action must be an "ultimate employment decision[] such as hiring, granting leave, discharging, promoting, or compensating." McCoy, 492 F.3d at 559-60. Hudson provides no argument, much less evidence, demonstrating that rejection from the rescue team was an ultimate employment decision. Although he argues that team participation was viewed was a proactive step toward promotion, he offers no evidence to support this claim. Additionally, employees, including Hudson, *volunteered* for the rescue team. Therefore, his pay was unaffected. The court finds there are no genuine disputes of fact with regard to Hudson's discrimination claim based on Cleco's initial failure to select him for the rescue team, and the motion for summary judgment is granted as to this claim.[14]

---

[14]Cleco also argues that Hudson's discrimination claim based on the failure to select him for overtime welding work should be dismissed. However, even with the sur-reply, the court cannot grant summary judgment based on one sentence of argument, made for the first time in a reply brief, where no law is cited or explained. As the court has already explained in this opinion, it cannot make

17

**D.      Constructive Discharge/Hostile Work Environment.**

Cleco summarily concludes in its reply brief that the plaintiffs' section 1981 claims are not supported by competent evidence and should be dismissed. Again, however, even with the sur-reply, the court will not grant summary judgment based on scant argument, made for the first time in a reply brief, where conclusory statements of law are cited and not explained or applied to the facts at issue. District courts have a "limited and neutral role in the adversarial process" and should not become advocates who comb through the record and make a party's case. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998); see also Hernandez v. Yellow Transp., Inc., 641 F.3d 118, 124 (5th Cir. 2011). Accordingly, the court finds that there are genuine disputes of material fact, and Cleco's motion for summary judgment as to the merits of the plaintiffs' remaining section 1981 claims is denied.

### III. CONCLUSION

Based on the foregoing analysis, the defendant's motion for summary judgment (Record Document 41) is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** as to the plaintiffs' state law claims, brought pursuant to La. R.S. 23:301,

---

summary judgment arguments for the defendant. See John Deere Co. v. Am. Nat'l Bank, Stafford, 809 F.2d 1190, 1192 (5th Cir. 1987) ("[A] district court may not grant summary judgment sua sponte on grounds not requested by the moving party.").

et. seq., and La. R.S. 51:2256, Williams's section 1981 failure to hire claim, and Hudson's race discrimination claim based on the failure to select him for the rescue team. The motion is also **GRANTED** to the extent the plaintiffs alleged state law claims of intentional infliction of emotional distress. These claims are **DISMISSED WITH PREJUDICE**. The motion is further **GRANTED** with respect to the plaintiffs' Title VII and ADEA claims, which are **DISMISSED WITHOUT PREJUDICE**.[15]

The motion for summary judgment is **DENIED** with regard to the plaintiffs' hostile work environment, retaliation, wrongful termination, and failure to promote claims under section 1981.

An order consistent with the terms of this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 21st day of September, 2011.

_____
JUDGE TOM STAGG

---

[15] As a result, Williams has no claims remaining against Cleco.