U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

FEB 19 2013

TONY R. MOORE, CLERK
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

EDDIE CULBERT

versus

CLECO CORPORATION

CIVIL ACTION NO. 11-1698

JUDGE TOM STAGG

## MEMORANDUM RULING

Before the court is the second motion for summary judgment filed by the defendant, Cleco Corporation ("Cleco"), seeking dismissal of all remaining claims alleged by the plaintiff, Eddie Culbert ("Culbert").  See Record Document 122. Based on the following, Cleco's second motion for summary judgment is **GRANTED**.

## I. BACKGROUND[1]

Culbert, along with twelve other current and former African-American employees of Cleco, brought an action against Cleco, alleging, inter alia, race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, Section 1981 of the United States Code, the Louisiana Employment Discrimination

---

[1]Much of the background is adopted from the court's previous summary judgment ruling.  See Record Document 113.

Law, and the Louisiana Commission on Human Rights. See Record Documents 1, 5 and 25. The court ruled on Cleco's first motions for summary judgment as to each plaintiff, and the remaining causes of action were severed. See Record Document 115. Regarding the first motion for summary judgment as to the claims of Culbert, the court dismissed his Title VII claims, state law claims, and ADEA claims. See Record Document 114. The court now addresses Culbert's remaining failure to promote, pay discrimination, racial discrimination, retaliation, hostile work environment, and constructive discharge claims brought pursuant to 42 U.S.C. § 1981.

Culbert began working for Cleco in May of 1978 as a Laborer at the Rodemacher Power Plant facility, and on October 25, 1980, he became a Utility Worker. See Record Document 122, Exs. A at 7 and B at ¶ 3. He was promoted to Auxiliary Operator in 1982. That position comprised three different levels: associate, mid, and senior. In 1985, Culbert became a mid-level Auxiliary Operator and he became a senior-level Auxiliary Operator in 1987. See id., Ex. B at ¶3. His duties included monitoring equipment, and much of the work was performed outside. See id., Ex. A at 8. Employees who held the position of Equipment Operator worked inside the plant's control room. An Equipment Operator received a higher hourly wage than an Auxiliary Operator, and Cleco considered the position a promotion from

2

Auxiliary Operator.  See id., Ex. B at ¶ 3.

In June of 1997, the positions of Auxiliary Operator and Equipment Operator were combined into the Power Plant Technician position.  See id., Ex. B at ¶ 6.  The position, like that of the Auxiliary Operator, comprised three levels:  associate, mid, and senior.  The Auxiliary Operator's duties were assigned to the associate and mid-level positions.  The Equipment Operator duties were assigned to the senior position.  According to Rebekah Spring, Director of Employee Relations, the senior level Power Plant Technician was paid a higher hourly wage of approximately two to three dollars and was considered a promotion from the lower level positions.  See id.  After this reclassification, Culbert became a mid-level Power Plant Technician.  See id., Ex. C at ¶ 3.  In December of 2007, the Power Plant Technician position was split into the two positions of Auxiliary and Equipment Operator as they were originally.  See id., Ex. C at ¶ 9.  Culbert retired on July 1, 2008.  See id., Exs. A at 8 and B at ¶ 9.

## II.  ANALYSIS

### A.    Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]   Quality Infusion Care, Inc. v. Health

_____

[2]The court notes that amended Rule 56 requires that there be "no genuine

3

Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

## B.    Failure To Promote.

Culbert claims that Cleco failed to promote him during his tenure at Cleco because of his race, in violation of 42 U.S.C. § 1981. See Record Documents 1 and

---

**dispute** as to any material fact," but this change does not alter the court's analysis. Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

5.  Cleco argues that Culbert's failure to promote claims have prescribed under Louisiana's one-year prescriptive period and, otherwise, have no merit.  Culbert maintains that his claims, filed pursuant to section 1981, have not prescribed.

## 1.    Statute Of Limitations.

Section 1981 does not contain a statute of limitations.  See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371, 124 S. Ct. 1836, 1839 (2004).  When a federal statute does not contain a statute of limitations, courts should apply "the most appropriate or analogous state statute of limitations."  Id.  Under Louisiana law, "[a] section 1981 claim is best characterized as a tort . . . and is, therefore, governed by the one-year prescriptive period for delictual actions dictated by [Louisiana Civil Code article] 3492."  Taylor v. Bunge Corp., 775 F.2d 617, 618 (5th Cir. 1985).  However, for actions arising under federal statutes enacted after December 1, 1990, courts must apply a catchall four-year statute of limitations.  See 28 U.S.C. § 1658 ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.").

Section 1981 was originally enacted as part of the Civil Rights Act of 1866 and covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process."  Patterson v.

McLean Credit Union, 491 U.S. 164, 179, 109 S. Ct. 2363, 2374 (1989). Section 1981 "did not protect against harassing conduct that occurred after the formation of the contract." Jones, 541 U.S. at 372, 124 S. Ct. at 1840 (citing Patterson, 491 U.S. 164, 109 S. Ct. 2363). Section 1981 was later amended by the Civil Rights Act of 1991 to create a cause of action for discriminatory and retaliatory conduct occurring after the formation of the contract. See id. Thus, the applicable statute of limitations depends upon whether the claim was actionable under the older version of section 1981 or is only made possible by the 1991 amendments. See id. at 382, 124 S. Ct. at 1845. Where the plaintiff's claim was available under the original section 1981, the court must apply the analogous state statute of limitations, which in Louisiana is one year. See id. at 371, 124 S. Ct. at 1839; Taylor, 775 F.2d at 618. However, where the claim is only available under section 1981 as amended, the cause of action is said to "arise under" the Civil Rights Act of 1991 and the federal four-year statute of limitations provided by section 1658 applies. See Jones, 541 U.S. at 382, 124 S. Ct. at 1845.

Failure to promote claims were actionable under section 1981, prior to the 1991 amendments, if "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." Patterson, 491 U.S. at 185, 109 S. Ct. at 2377. As the Supreme Court explained in Patterson, "only where

6

the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under [section] 1981." Id. "In deciding whether a change of position rises to the level of a new and distinct relation, the court must compare the employee's current duties, salary, and benefits with those incident to the new position." Police Assoc. of New Orleans v. City of New Orleans, 100 F.3d 1159, 1170-71 (5th Cir. 1996). If the new position involves "substantial changes," the failure to promote claim was available under section 1981 prior to the 1991 amendments and Louisiana's one-year prescriptive period applies. See id.; see also Fonteneaux v. Shell Oil Co., 289 F. App'x 695, 699 (5th Cir. 2008). Otherwise, the claim is only available under section 1981 as amended and the four-year statute of limitations applies. See id.

Cleco argues that a promotion from an Auxiliary Operator position to an Equipment Operator would have resulted in substantial changes to Culbert's role at Cleco. To support its argument, Cleco delineates the specific duties and responsibilities of each position. Equipment Operators were in charge of running the facility's power generating equipment and starting the facility's boiler. Duties included manning the control room's computer, starting and stopping the equipment when scheduled, answering and implementing the facility's resource coordinator's instructions regarding how much power the facility needed to generate, and

7

monitoring the facility's equipment. See Record Document 122, Exs. A at 46, B at ¶ 4, C at ¶ 2, and D at ¶ 3. To be promoted to this position, a candidate, such as Culbert, was required to pass a reclassification exam. See id., Ex. A at 15. In contrast, the Auxiliary Operator was more manual in nature. See id., Exs. B-1, C at ¶ 2, and D at ¶¶ 4-5. Its duties included: monitoring equipment to check temperatures, oil levels, vibrations, and valve positions; "valving in" and "valving out" equipment; oiling equipment; and recording equipment data. See id. Because of the nature of the Equipment Operator's duties, the position required a higher level of technical skill with regard to operating and maintaining the facility's equipment than that of the Auxiliary Operator and, therefore, was considered a promotion over the Auxiliary Operator position. See id., Exs. C at ¶ 4 and D at ¶¶ 4, 5.

Culbert does not dispute these descriptions but counters by arguing that he asserted section 1981 discrimination, retaliation, and hostile environment claims and that they were made possible by the 1991 Amendments. While what Culbert states is true, these claims have no bearing on the issue presently before the court. Culbert then concludes that his failure to promote claims are based on his current employment contract with Cleco.

Of the two arguments, the court finds Cleco's argument to be the more convincing one. The Equipment Operator/Senior Power Plant Technician and

8

Auxiliary Operator had substantially different qualifications and responsibilities.  As a result, Culbert's failure to promote claims arise under section 1981 prior to the 1991 Amendment, and therefore, Louisiana's one-year prescriptive period applies.  Culbert filed his complaint on December 11, 2009, therefore, any of his failure to promote claims that arose before December 11, 2008, have prescribed.

Culbert does not mention in his brief any specific instances where Cleco failed to promote him to the position of Equipment Operator.  Consequently, it is up to the court to glean from the record when Culbert's claims arose.  According to the evidence that both parties presented to the court, the latest date that an individual was promoted to the Equipment Operator position was December 15, 2007.  See id., Ex. B at ¶ 8.  Culbert presents no additional evidence that there were promotional opportunities for the position after that date or that he applied for any Equipment Operator positions after that date.  He only argues that he tried to take the reclassification exam to one day get the promotion but was denied because he was an African-American; however, he presents no evidence regarding when he was denied the opportunity.  For this reason, the court finds that the latest that any of Culbert's failure to promote claims arose was in December of 2007, nearly two years before he filed his complaint.  Accordingly, Culbert's failure to promote claims have pescribed.

## 2.    Merits Of Failure To Promote Claims.

Assuming, <u>arguendo</u>, that Culbert had brought his claims in a timely manner, his claims still fail on the merits. Culbert's claims of employment discrimination brought pursuant to section 1981 are analyzed under the same standards as Title VII claims.  <u>See</u> <u>Decorte v. Jordan</u>, 497 F.3d 433, 437 (5th Cir. 2007).

### a.    Prima Facie Case.

"An employee can prove discrimination through direct or circumstantial evidence." <u>Jones v. Robinson Prop. Grp., L.P.</u>, 427 F.3d 987, 992 (5th Cir. 2005). For cases of discrimination based on circumstantial evidence, the court applies the <u>McDonnell Douglas</u> burden-shifting analysis.  <u>See</u> <u>Davis v. Dallas Area Rapid Transit</u>, 383 F.3d 309, 316-17 (5th Cir. 2004) (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)).

> To survive summary judgment under <u>McDonnell Douglas</u>, the plaintiff must first present evidence of a prima facie case of discrimination. If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action.  If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.[3]

---

[3] "[A] plaintiff must present sufficient evidence to find that the employer's asserted justification is false." <u>Crawford v. Formosa Plastics Corp.</u>, 234 F.3d 899,

<u>Davis</u>, 383 F.3d at 317 (citations omitted).

Culbert denies Cleco's assertion that he does not have direct evidence of racial discrimination and merely instructs the court to see his statement of material facts for support. <u>See</u> Record Document 129, Memorandum in Opposition at 6. If Culbert is referring to Plaintiff's Exhibit E, it contains printed emails regarding individuals who expressed interest in certain promotional opportunities within Cleco. Copies of these emails contain handwritten notes indicating a candidate's race, sex, and age. However nowhere in Exhibit E is Culbert mentioned. This is not direct evidence. "Direct evidence is evidence which if believed, proves the facts without inference or presumption." <u>Jones</u>, 427 F.3d at 992. This is quintessential circumstantial evidence and has no relevance to Culbert's specific claims. The court also finds it noteworthy that despite Culbert's contention that he has produced direct evidence, he proceeds to make his case under the <u>McDonnell Douglas</u> framework which is the test used for circumstantial evidence. Accordingly, the court will conduct its analysis under <u>McDonnell Douglas</u>.

To establish a prima facie case of race discrimination based on a failure to promote, the plaintiff must demonstrate:

> (1) that the employee is a member of [a] protected class; (2) that he sought and was qualified for the position; (3) that

903 (5th Cir. 2000) (citations and quotations omitted).

11

> he was rejected for the position; and (4) that the employer
> continued to seek or promoted applicants with the
> plaintiff's qualifications.

<u>Davis</u>, 383 F.3d at 317 (citations omitted). Cleco asserts that Culbert was not qualified for the promotion because, although he took the reclassification exam, he never passed it. This is supported by the declarations of Rebekah Spring, Robert St. Romain, and David Powers. <u>See</u> Record Document 122, Exs. B at ¶ 7, C at ¶ 4, and D at ¶ 5. Culbert states in his own declaration that he was never allowed to take the reclassification exam. <u>See</u> Record Document 129, Declaration of Eddie Culbert at ¶ 38. While Culbert never became qualified because he never passed the exam, there is the question of whether he had that opportunity. Regardless, the court need not address this issue to resolve his failure to promote claims because: 1) they have prescribed as already noted and 2) he has not made a sufficient showing of pretext.

### b. Pretext.

As previously mentioned, if the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to state a legitimate, nondiscriminatory reason for the adverse employment action. "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." <u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 557 (5th Cir. 2007). Cleco has met its burden by stating that Culbert never passed the reclassification exam.

12

Now the burden shifts to Culbert to demonstrate that Cleco's legitimate reason was pretextual.

"To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." Id. "A plaintiff may establish pretext 'by showing that a discriminatory motive more likely motivated'" his employer's decision by such evidence as disparate treatment, or that the employer's explanation is unworthy of credence. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 220 (5th Cir. 2001) (quoting Defenbaugh-Williams v. Wal-Mart Stores, Inc., 156 F.3d 581, 589 (5th Cir. 1998)). When conducting a pretext analysis, the court is not to engage in second-guessing an employer's business decisions. See LeMaire v. La. Dept. Of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007). Anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones. See id. (citing Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991)). A showing that Culbert was "clearly better qualified" than those that were selected for the position will be sufficient to show pretext. See Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010).

Culbert has not presented any tenable evidence that he was clearly better qualified than those who were selected but only states that a jury could conclude that he was clearly better qualified for the Equipment Operator and Senior Power Plant

13

Technician positions.  Not once does he mention the other individuals who were selected for those positions, much less does he engage in any comparative analysis. He only presents his own declaration and declarations from other individuals who testify that he was a well-qualified and hard working individual.  This may be true, but it is not enough to show pretext.

Regarding Culbert's contention that he was never allowed to take the reclassification exam, he gives no concrete evidence to substantiate that claim.  He does not identify how many times he sought to take the exam, the dates he sought to take the exam, or the reason he was given as to why he was not allowed to take the exam.  Such conclusory and unsubstantiated assertions are insufficient to satisfy Culbert's summary judgment burden to show pretext.

Culbert also contends that he has established pretext through his presentation of direct evidence that shows it is a common practice for Cleco to indicate age, race, and sex of candidates prior to interviews.  There are several issues that the court needs to address regarding his argument.  First, the court has already explained that this evidence is not direct but circumstantial.  Second, the evidence is irrelevant to Culbert's failure to promote claims.  Not once is Culbert or any position for which he applied mentioned on any of the emails or forms.  Third, the argument is erroneous. Obviously, the handwritten notes would not have been on the emails before they were

14

actually sent. Regardless, Felice Burton ("Burton"), Cleco's Employment Coordinator, stated in her declaration that, once a job posting closed, she would draft, sign, and send an email to the hiring supervisors indicating the names of the individuals who applied. See Record Document 122, Ex. E at 2. A copy of that email would then be placed in the job log. After a selection was made, a panel would review information regarding the application process which included among other things each candidate's race, sex, and age. Sometimes this information would be typed on a separate sheet of paper and at other times Burton would write the information next to the candidate's name on a copy of the email previously mentioned. See id.

The other assertions and allegations either articulated or implied by Culbert are conclusory and unsubstantiated. For these reasons, Culbert has clearly failed to carry his burden of showing that Cleco's reasons were pretextual.

## C.   Miscellaneous Racial Discrimination And Retaliation Claims.

In his complaint, Culbert asserts claims of compensation discrimination. See Record Document 1 at ¶ 64. Cleco argues on summary judgment that these claims are untimely under the four-year statute of limitations and nevertheless have no merit. Culbert makes no attempt to address these arguments in his opposition. Accordingly, he has effectively abandoned these claims. See Milton v. Boise Cascade, L.L.C.,

15

2011 WL 285091, at *5 (W.D. La. 2011); see also Keenan v. Tejeda, 290 F.3d 252, 262-63 (5th Cir. 2002).[4]

Culbert also asserts claims of racial discrimination for:  1) allegedly being forced to sign performance appraisals he did not agree with; 2) being asked to perform maintenance duties and allegedly being assigned to a maintenance rotation shift for six months at a time instead of just three months; 3) being forced to come to work while sick in 2002; and 4) other African-Americans allegedly being terminated for minor infractions and treated less favorably than Caucasian employees with respect to disciplinary matters.  See Record Document 1 at 16-19.  To establish his prima facie case under McDonnell Douglas, Culbert must demonstrate that he:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

McCoy, 492 F.3d at 556.  Adverse employment actions include "only ultimate employment actions such as hiring, granting leave, discharging, promoting, or compensating." Id. at 559 (quoting Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d

---

[4] The court also finds that Culbert's pay discrimination claims are time barred by the four-year statute of limitations and fail on the merits.

642, 657 (5th Cir. 2002)).

Culbert's racial discrimination claims fail on several grounds. First, none of his claims concern ultimate employment actions. He has failed to show how being forced to sign unfavorable performance appraisals and allegedly being forced to come into work sick rises to the level of an ultimate employment action.[5]  Regarding whether being assigned to the maintenance rotation was an ultimate employment decision, Culbert only contends that this prevented him from doing his duties and advancing his career like his Caucasian co-workers were able to do.  He does not explain this allegation in detail and only cites to his statement of material facts in general.  The court has looked at his statement of material facts and finds nothing to substantiate this allegation as an ultimate employment decision under Fifth Circuit precedent.  See Fuentes v. Postmaster of U.S. Postal Serv., 282 F. App'x. 296, 301 (5th Cir. 2008) (finding that a reassignment may constitute an adverse employment action when it involves a major change in compensation, duties, and responsibilities). Second, Culbert does not specifically provide any similarly situated comparators that were treated more favorably.  For example, he only alleges that he was forced to perform maintenance work while Caucasian employees were exempt.    These

---

[5] Culbert's discrimination claim regarding his being forced to come to work while sick has prescribed under the four-year statute of limitations since the alleged incident occurred in 2002.  See Record Document 122, Ex. A at 36.

allegations are conclusory and unsubstantiated and are, therefore, insufficient to satisfy Culbert's burden at summary judgment.[6] As for his claim that other African-American Cleco employees were treated less favorably than their fellow Caucasian employees, this claim does not involve Culbert and is completely irrelevant to his case.

Culbert additionally claims Cleco retaliated against him for filing an Equal Employment Opportunity Commission ("EEOC") charge in 1981. See Record Document 1 at 17. He alleges that Cleco retaliated against him by immediately harassing him after he filed the complaint and by failing to promote him. Cleco argues in its motion for summary judgment that his claims are untimely under the four-year catchall statue of limitations and, otherwise, are meritless. Like his pay discrimination claim, Culbert does not address any of the issues raised by Cleco with regard to his retaliation claims. Accordingly, he has abandoned these claims. Regardless of his failure to address Cleco's arguments, his retaliation claims fail on the merits. First, Culbert filed his EEOC charge in 1981. See Record Document 122, Ex. A at 16. Any harassment immediately thereafter would have clearly prescribed under the four-year statute of limitations. Second, he has not presented sufficient

---

[6] Assuming, arguendo, that Culbert could establish a prima facie case, his claims would still fail on the issue of pretext.

evidence, if any, that establishes a causal connection between his filing the EEOC

charge and his failure to be promoted. This is especially true considering his failure

to promote claims arose years after he filed the EEOC charge.

**D.    Hostile Work Environment.**

In order to establish a hostile working environment claim, Culbert must prove

that:

> (1) [he] belongs to a protected group; (2) [he] was
> subjected to unwelcome harassment; (3) the harassment
> complained of was based on race; (4) the harassment
> complained of affected a term, condition, or privilege of
> employment; (5) the employer knew or should have known
> of the harassment in question and failed to take prompt
> remedial action. For harassment on the basis of race to
> affect a term, condition, or privilege of employment, as
> required to support a hostile work environment claim under
> Title VII, it must be sufficiently severe or pervasive to alter
> the conditions of the victim's employment and create an
> abusive working environment.
>
> In determining whether a workplace constitutes a
> hostile work environment, courts must consider the
> following circumstances: the frequency of the
> discriminatory conduct; its severity; whether it is
> physically threatening or humiliating, or a mere offensive
> utterance; and whether it unreasonably interferes with an
> employee's work performance.

Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002) (quotations and citations

omitted). "[S]imple teasing, . . . offhand comments, and isolated incidents will not

amount to discriminatory changes in the 'terms and conditions of employment.'"
Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283 (1998).
"The plaintiff bears the burden of showing that his employer failed to take effective
action." Skidmore v. Precision Printing and Packaging, Inc., 188 F.3d 606, 616 (5th
Cir. 1999).

Culbert asserts that the following allegations support his claim of hostile work
environment: 1) while working as a utility worker, prior to 1981, he had to eat lunch
and take breaks in the bathroom or utility room to avoid hearing racist jokes; 2)
throughout his employment at Cleco, no African-Americans were promoted to
managerial positions; 3) in 2005 or 2006, a co-worker told him: "Hey Eddie, you
better tell this boy [an African-American utility worker] how things are running out
here"; 4) sometime in 2005, a co-worker stated: "You boys better get in that hole,"
referring to going into one of the precipitators; 5) he overheard two co-workers use
the "n" word on several occasions but he does not remember when this occurred; 6)
his Caucasian supervisor stated: "it's the 2000s now. You can ride in the front," in
reference to Culbert riding in the back of a truck while two Caucasian co-workers
rode in the front; 7) in 2006 or 2007, the plant superintendent, Robert St. Romain,
asked Culbert if he knew what "nigger rigging" was; 8) in 2007 a hangman's noose
was found hanging on a turbine; 9) in 2006 or 2007, a Caucasian supervisor stated:

20

"one thing a black man can't make is a white baby"; and 10) he overheard a
Caucasian co-worker tell other Caucasian co-workers that he was going to "kick a
nigger in the ass."[7] [8]  See Record Document 122, Ex. A at 24-27, 40-45.  Culbert
admits in his deposition that he did not report much of this alleged behavior or he
cannot remember whether he did or not.[9]  See id.

Culbert's hostile work environment claim fails on several grounds.  In several
of his allegations, he cannot make a showing that Cleco knew or should have known
of the alleged harassment and failed to take effective action to prevent it.  As
mentioned, Culbert did not report much of the alleged conduct, and, as a result, there
is not sufficient evidence that Cleco was aware of most of Culbert's allegations.[10]
Regardless, his claim is based upon sporadic conduct and isolated incidents that

---

[7]For the allegations without dates, Culbert is unable to recall when these
occurred.  See Record Document 122, Ex. A at 24-27, 40-45.

[8]Culbert asserts several other allegations that have no relation to him and
were experienced by other individuals.  As he was not subjected to these acts, the
court does not consider these allegations in its determination.

[9]In his statement of material facts at paragraph 28, Culbert denies that he did
not report the alleged harassment and that he testified in his deposition that he
reported the conduct to Ed Taylor and John Melancon in Human Resources.  He
cites to his own declaration at paragraph 47 in support which states the same.  Not
once does he actually cite to his deposition.

[10]This does not include instances where the alleged harassing conduct came
from a supervisor.

21

occurred over the course of his entire employment which spanned over twenty-five years.   Other allegations asserted by Culbert were those to which he was not subjected.  The court does not find this alleged conduct, while offensive, to rise to a severe or pervasive level required of a hostile environment claim.

## E.   Constructive Discharge.

Culbert alleges that he was forced into retirement due to the conduct already addressed herein.  To prove constructive discharge, a "plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." Faruki v. Parsons, S.I.P, Inc., 123 F.3d 315, 319 (5th Cir. 1997).  Demonstrating constructive discharge imposes a high burden.  To carry this burden, Culbert must "offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." Id.  In addition, constructive discharge requires a greater degree of harassment than that required by a hostile environment claim.  See Benningfield v. City of Houston, 157 F.3d 369, 378 (5th Cir. 1998).  Courts consider a variety of factors, including the following: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; (6) reassignment to work under a younger [or less experienced/qualified] supervisor; or

22

(7) offers of early retirement [or continued employment on terms less favorable than the employee's former status]. See Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001); see also Barrow v. New Orleans S.S. Ass'n, 10 F.3d 292, 297 (5th Cir. 1994).

In response to Cleco's arguments on this issue, Culbert only states that he "was constructively discharged from Cleco as a result of the persistent harassment he suffered each day based upon his race." See Record Document 129, Memorandum in Opposition at 8. This type of conclusory allegation is insufficient to satisfy Culbert's burden on his constructive discharge claim. And because Culbert failed to establish sufficient evidence for his hostile work environment claim, a fortiori, he has not presented sufficient evidence in the record to make his prima facie case for his constructive discharge claim. Accordingly, his constructive discharge claim must be dismissed.

### III.  CONCLUSION

Based on the foregoing analysis, Cleco's second motion for summary judgment (Record Document 122) is **GRANTED**.  The court finds there is no genuine dispute as to any material fact with regard to any of Culbert's claims.

A judgment consistent with the terms of this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the _18th_ day of February, 2013.

JUDGE TOM STAGG